UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FRANK RAFAEL ENRIQUEZ,

                    Plaintiff,

vs.                              Case No.  2:02-cv-510-FtM-VMC-SPC

W. LANDERS, J. LANDERS, FNU
COTTRELL, FNU DIXON, FNU MORALES,
FNU BRUNSON, LISA CONWAY, DR.
ALBERT MACHADO, ROBERT BRIODY,
FNU LIPSCOMBE, FNU STAUNTON,

                    Defendants.
_____

## ORDER

### I. Status

     This matter comes before the Court upon the FCCC Defendants'
Motion to Dismiss Plaintiff's Second Amended Complaint, or in the
Alternative Motion for Summary Judgment filed on behalf of
Defendants W. Landers, J. Landers, FSM Allen, TCC Dixon, TCC Baez,
TCC Brunson, TA Donahue, TA Jones, Nurse Campbell, Nurse Wright,
Nurse Sholtz, Lisa Conway, Nurse Adkins, Dr. Ackerman, TA Hartley,
TA Powell, Dr. Albert Machado, TA Mustone, TCC Corcoran, TA
Edwards, TCC George, TCC Packard, TCC Davis, Nurse Bevans, Nurse
Luther, Nurse Celestin, Dr. Robert Briody, Mr. Santana, Dr.
Lipscomb, Mr. Vaughn, TA Clifton, TCCC Price, FSM Mosley, TCC
Fudge, TA Cowell, Dr. Shadle, Dr. Bellino, TCC Burgess, FSM
Staunton, Lisa Paeplow, Ms. Muse, Mr. Blythewood, TCC Chisolm,
Nurse Gordon, and Nurse Wise ("FCCC Defendants Motion" Doc. #204)
and Defendant TCC Morales's Motion to Dismiss Plaintiff's Second

Amended Complaint, or in the Alternative Motion for Summary Judgment ("Morales Motion" Doc. #234). The FCCC Defendants' and Defendant Morales's Motions refer to matters outside the four corners of Plaintiff's Second Amended Complaint. As such, they will be converted into motions for summary judgment. <u>Somerville v. Hall</u>, 2 F.3d 1563, 1564 (11th Cir. 1993). Plaintiff was advised of the provisions of Fed. R. Civ. P. Rule 56. Plaintiff filed a Response in Opposition to the FCCC Defendants' Motion (Doc. #207) and a Response in Opposition to Morales's Motion (Doc. #239). These matters are now ripe for review.

Also pending are a Motion for Sanctions (Doc. #231), Motion for Issuance of Subpoena under Seal (Doc. #238), Motion to Enforce Judgment (Doc. #242), Motion to Strike Plaintiff's Interrogatories (Doc. #243), Motion for Summary Judgment (Doc. #246), Motion to Strike Motion for Summary Judgment (Doc. #250), and Motion to Strike Plaintiff's Request for Admissions (Doc. #251).

Plaintiff, Frank Enriquez ("Plaintiff" or "Enriquez"), at the time of filing his Second Amended Complaint, was a civil detainee awaiting a civil commitment trial pursuant to Fla. Stat. § 394.910 ("Jimmy Ryce Trial") and was confined at the Florida Civil Commitment Center ("FCCC"), which is operated by Liberty Behavioral Healthcare, Inc. Plaintiff remains a resident at FCCC as of the date of this Order. Due to Plaintiff's *pro se* status, the Court permitted Plaintiff an opportunity to amend his complaint on

several occasions. <u>See</u>, Orders dated March 24, 2003 (Doc. #9), November 13, 2003 (Doc. #181), March 24, 2004 (Doc. #188). Plaintiff is proceeding on his Second Amended Complaint filed on April 13, 2004 (Doc. #189).

Plaintiff's Second Amended Complaint alleges constitutional violations of excessive force, failure to prevent the use of excessive force by failure to train, due process violations, and deliberate indifference to serious medical needs. The Court previously dismissed various Defendants from Plaintiff's Second Amended Complaint. <u>See</u> Order of Court dated January 14, 2005 (Doc. #210) (dismissing Defendant Caballero); and Order of Court dated February 1, 2005 (Doc. #213) (dismissing Defendants Chamberlain, Rios, Brucker, Hudson, Devine and Hughes, Florida Department of Corrections Officers who Plaintiff alleges illegally used restraints on Plaintiff and subjected Plaintiff to cruel and unusual punishment regarding use of restraints).

Plaintiff's Second Amended Complaint consists of twenty-five type-written pages with 133 separate averments. Plaintiff contends that the remaining Defendants, who were employees of Liberty and employed at the FCCC, acted with deliberate indifference in connection with their medical treatment of his herniated disc and sciatica. He again claims that the use of restraints to transport him to outside appointments constitutes cruel and unusual punishment and caused him undue pain, and was in contradiction of

-3-

his surgeon's instructions and that Plaintiff not wear a belly chain or waist chain.  Plaintiff also alleges assault and battery, and negligence, and claims he was placed in "punitive segregation" without a hearing.  Plaintiff asks for declaratory and injunctive relief and substantial monetary compensatory and punitive damages. (See Second Amended Complaint, pp. 21-24).

At the outset, the Court notes that Plaintiff's Second Amended Complaint does not name the following Defendants who were identified by Plaintiff in his previous Complaint and Amended Complaint:  J. Landers, FSM Allen, TCC Baez, TA Donahue, TA Jones, Nurse Campbell, Nurse Farrell, Nurse Wright, Nurse Sholtz, Nurse Adkins, Dr. Ackerman, TA Hartley, TA Powell, TA Mustone, TCC Corcoran, TA Edwards, TCC George, TCC Packard, TCC Davis, Nurse Bevans, Nurse Luther, Nurse Celestin, Mr. Santana, Mr. Vaughn, TA Clifton, TCCC Price, FSM Mosley, TCC Fudge, TA Cowell, Dr. Shadle, Dr. Bellino, TCC Burgess, Lisa Paeplow, Ms. Muse, Mr. Blythewood, TCC Chisolm, Nurse Gordon, and Nurse Wise.  Nor does Plaintiff's Second Amended Complaint contain any allegations as to these Defendants.  Consequently, the Court recognizes that these previously named Defendants are no longer parties to this action.

## II. Standard of Review

With respect to the standard for granting summary judgment, the Eleventh Circuit Court of Appeals has stated:

> [S]ummary judgment is proper "if the pleadings, depositions, answers to

-4-

> interrogatories, and admissions on file,
> together with the affidavits, if any, show
> that there is no genuine issue as to any
> material fact and that the moving party is
> entitled to judgment as a matter of law."
> Fed. R. Civ. P. 56(c); <u>Celotex Corp. v.</u>
> <u>Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548,
> 2552, 91 L. Ed. 2d 265 (1986).

<u>In re Optical Techs., Inc.</u>, 246 F.3d 1332, 1334 (11th Cir. 2001).

"Only factual disputes that are material under the substantive law

governing the case will preclude entry of summary judgment."

<u>Lofton v. Sec'y of Dept. Of Children and Family Servs.</u>, 358 F.3d

803 (11th Cir. 2004).

The parties' respective burdens and the Court's

responsibilities are outlined as follows:

> The party seeking summary judgment bears
> the initial burden to demonstrate to the
> district court the basis for its motion for
> summary judgment and identify those portions
> of the pleadings, depositions, answers to
> interrogatories, and admissions which it
> believes show an absence of any genuine issue
> of material fact. <u>Taylor v. Espy</u>, 816 F.
> Supp. 1553, 1556 (N.D. Ga. 1993) (citation
> omitted). In assessing whether the movant has
> met this burden, the district court must
> review the evidence and all factual inferences
> drawn therefrom, in the light most favorable
> to the non-moving party. <u>Welch v. Celotex</u>
> <u>Corp</u>., 951 F.2d 1235, 1237 (11th Cir. 1992);
> <u>Rollins v. TechSouth, Inc.</u>, 833 F.2d 1525,
> 1528 (11th Cir. 1987). If the movant
> successfully discharges its burden, the burden
> then shifts to the non-movant to establish, by
> going beyond the pleadings, that there exist
> genuine issues of material fact. <u>Matsushita</u>
> <u>Elec. Indus. Co. v. Zenith Radio Corp.</u>[,] 475
> U.S. 574, 586-87, 106 S. Ct. 1348, 1355-56, 89

L. Ed. 2d 538 (1986); <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. G1991).

Applicable substantive law will identify those facts that are material. <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant. <u>Id.</u> For factual issues to be considered genuine, they must have a real basis in the record. <u>Matsushita</u>, 475 U.S. at 586-87, 106 S. Ct. at 1355-56. It is not part of the court's function, when deciding a motion for summary judgment, to decide issues of material fact, but rather determine whether such issues exist to be tried. <u>Anderson</u>, 477 U.S. at 249, 106 S. Ct. at 2135. The Court must avoid weighing conflicting evidence or making credibility determinations. <u>Id.</u> at 255, 106 S. Ct. at 2513-14. Instead, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Id.</u> Where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a general issue of material fact, then the court should refuse to grant summary judgment." <u>Barfield v. Brierton</u>, 883 F.2d 923, 933-34 (11th Cir. 1989) (citation omitted).

<u>Hairston v. Gainesville Sun Pub. Co.</u>, 9 F.3d 913, 918-19 (11th Cir. 1993); <u>see</u> <u>Mulhall v. Advance Sec. Inc.</u>, 19 F.3d 586, 589-90 (11th Cir. 1994); <u>see</u> <u>also</u> <u>Hickson Corp. v. N. Crossarm Co., Inc.</u>, 357 F.3d 1256, 1260 (11th Cir. 2004).

"It is true that on a motion for summary judgment, all reasonable inferences must be made in favor of the non-moving party." <u>Cuesta v. School Bd. of Miami-Dade County</u>, 285 F.3d 962, 970 (11th Cir. 2002) (citation omitted). "A court need not permit

a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" Id. (citations omitted).   Additionally, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Burger King Corp. v. Weaver, 169 F.3d 1310, 1321 (11th Cir. 1999)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

### III. Facts

In his Second Amended Complaint, Plaintiff describes two incidents where he was forcibly removed to "punitive segregation" on May 19, 2001, and again on August 28, 2002. He asserts that these were completely unprovoked attacks by FCCC staff, and resulted in his being kept in "punitive segregation" for 30 and 32 days, respectively, with no notice of charges or a hearing. Plaintiff also claims he was injured during the so-called attacks, which left him with bruises and abrasions.

Plaintiff alleges that on August 28, 2002, a nurse arrived at this housing unit to dispense medications.  Plaintiff claims that the nurse did not bring Soma, one of his two medications. Plaintiff told the nurse that he would take both medications after she went back to Medical and retrieved the Soma. Second Amended Complaint, ¶97. The nurse allegedly said she would not return to housing unit. Plaintiff spoke to Defendant Morales, who contacted

both a registered nurse and a facility safety manager about the matter. Second Amended Complaint, ¶¶98,99,101,102. Defendant Morales relayed to Plaintiff that both Nurse Farrell and Allen advised that the Soma was a "PRN" (as needed) medication and it was not brought to the dorm and dispensed unless Plaintiff requested it. Second Amended Complaint, ¶¶ 99,102. Although Plaintiff disputed these explanations, he returned to his cube. Plaintiff claims Defendants Morales and Dixon subsequently conducted a search in his cube. Second Amended Complaint, ¶¶ 99, 102, 103. Defendant Dixon allegedly told Plaintiff that his search was for "pistols, revolvers, knives, grenades, and bazookas." Second Amended Complaint, ¶ 103. Plaintiff claims Defendant Dixon taunted him, but that Defendant Dixon and Defendant Morales then left. Second Amended Complaint, ¶¶ 103,105.

Shortly thereafter, Defendant Brunson entered Plaintiff's cube and directed Plaintiff to pack his property because he was moving. Second Amended Complaint, ¶106. Plaintiff claims that, "without warning," Defendants Brunson and Morales suddenly "jumped on the plaintiff in his bed" and Defendant Morales twisted his arms so Defendant Brunson could place him in handcuffs. Second Amended Complaint, ¶108. Plaintiff claims Defendants Brunson and Morales lifted him off his bunk and forced him to walk, despite his request for a wheelchair and claims of pain. Second Amended Complaint, ¶¶109, 110. Plaintiff claims he was dragged when he could not walk

any further. Second Amended Complaint, ¶111. Plaintiff was placed in "punitive segregation." Second Amended Complaint, ¶118. Plaintiff claims he "received numerous bruises and abrasions to his arms, legs, and torso as a result of the assault," but was not taken to the infirmary to receive treatment. Second Amended Complaint, ¶¶112, 117. Plaintiff alleges that "[d]uring these events the plaintiff did not resist or threaten the officers in any fashion or break any prison rules." Second Amended Complaint, ¶113.

Morales's Motion for Summary Judgment (Doc. #234) as well as the FCCC Defendants' Motion for Summary Judgment (Doc. #204) refute Plaintiff's claims of unwarranted use of force or excessive force, and each motion provides ample evidentiary support, which demonstrates that Plaintiff had to be subdued due to his abusive behavior, and was then taken to secure management to reduce the safety risk Plaintiff was creating. Attached to Morales's Motion is an Incident Report (Exhibit 1 to Doc. #234) detailing the events of August 28, 2002, in which Plaintiff was moved to secure management involuntarily due to a "major behavioral incident" which was placing others at risk. The Incident Report was signed by Dixon, Felton, and Allen. Exhibit 2 to Morales's Motion is a Memo to Plaintiff, explaining why he was placed in secure management and explaining that an assessment will be conducted to determine whether continued placement in secure management is necessary. Plaintiff's cooperation was cited as necessary to the assessment

and termination of secure management status.  Exhibit 3 to Doc. #234 is a second Incident Report, later in the evening of August 28, when Plaintiff became verbally abusive to employees Dukes and Wells, who were delivering Plaintiff's bedding. Exhibit 3 also contains an Incident Report Response which logs Plaintiff's refusal to make a statement, that a mattress and bedding was provided, and that the verbal abuse by Plaintiff continued on August 29, and August 30, 2002.  Exhibit 5 to Doc. #234 contains the Psychiatric Notes of Dr. Bellino, who found Plaintiff "angry, hostile and belligerent. He was in a locked cell because of his behavior." Plaintiff's only comment to Dr. Bellino, the day after being placed in secure management, conveyed Plaintiff's desire to sue Dr. Bellino. See Exhibit 5 to Doc. #234. Plaintiff made no mention of injuries nor were any noted by Dr. Bellino.

Plaintiff filed a Resident Communication form on September 5, 2002, referring to his move into secure management, and complaining only about a lost power cord. No mention was made of any physical injuries or abuse. Exhibit 6 to Doc. #234. It was not until September 18, 2002, that Plaintiff's Resident Communication Form claimed an assault at the hands of Cottrell on September 10, and refered to being tortured on August 28. Exhibit 7 to Doc. #234. Plaintiff expressed his desire to press charges with the Sheriff's Department, and the response to the Communication Form provided Plaintiff with the contact information for the Sheriff's office.

There is no mention by Plaintiff that he ever pursued action through the Sheriff's office.

Plaintiff's response to Morales's motion and supporting documents consists of the same unsupported, conclusory, and self-serving allegations as found in his Second Amended Complaint (Doc.##239, 240, 241). Plaintiff offers in support an order from state court, entered July 30, 2002, directing the FCCC to "provide Plaintiff a neurologist for a medical examination" as prescribed by Dr. Machado (Doc. #241-2). However, there is no finding of any fault on the part of FCCC or its employees, nor does it support his claims of excessive use of force by Morales or any of the other Defendants.

The FCCC Defendants' Motion for Summary Judgment filed by Conway, Machado, Landers, Brunson, Lipscombe, and Briody (Doc. #204), supported by exhibits, contains fact-based claims and evidentiary support which satisfactorily refute Plaintiff's allegations of an unprovoked, forcible removal to secure management on May 19, 2001 and August 28, 2002. According to these Defendants and the supporting documentation, Plaintiff became verbally abusive and presented a risk to others, and had to be controlled and brought to secure management for his safety and the safety of the other residents and staff. (Doc. #204, pp. 14-16, and supporting exhibits). Plaintiff did not complain of any injuries, nor were any noted after his placement in secure management although Plaintiff

was examined by nurses, as is standard procedure after a use of force (Exhibit 1 to Doc. #204).

Attached to the FCCC Defendants' motion is a sworn affidavit of Robert Vaughn (Vaughn Affidavit), attesting to the maintenance of a file for each resident at FCCC which contains Incident Reports and documents relating to Behavior Intervention and Management process. (Exhibit 1 to Doc. #204). Included with the Vaughn Affidavit are three Incident Reports detailing the events of May 19, 2001, which describe a "major behavioral incident" in which Enriquez created a commotion about taking his medication, refused to return to his dorm, and had to be restrained. Plaintiff was taken to "time-out" and a medical post-use of force physical examination was attempted. No injuries were noted, and Plaintiff made no complaints except to verbally abuse the staff. Exhibit 1 to Doc. #204. Plaintiff was placed in secure management.

Plaintiff's supplement (Doc. #230) to his opposition to the FCCC Defendants' Motion for Summary Judgment offers little more than a litany of complaints regarding his medications and does not contradict the Defendants' well-documented version of events for either the May 19, 2001, or the August 28, 2002, incidents. In fact, one attached document to Doc. #230, a Resident Communication by Plaintiff dated October 26, 2001, evidences extremely foul language and a threatening tone used by Plaintiff demanding that a picture be taken of his dorm after a search. (See Doc. #230,

Exhibit 1, p. 2). Such language belies Plaintiff's repeated claims that he does nothing to provoke the forcible removals to secure management and that he always speaks politely to the staff at FCCC.

Plaintiff also alleges instances where he was not given his medication when requested, and did not receive the type or quality of medical care he desired. (See Second Amended Complaint, ¶¶52, 59-102, 125-128). Documents submitted by Plaintiff confirm his dissatisfaction with the medical staff, but do no more than demonstrate that there were problems with his prescriptions and that he disagreed with the medical staff on various issues. (See Doc. #230).

Finally, Plaintiff complains he was put into "punitive segregation" without notice or a hearing, thus violating his Due Process rights. Documents submitted by the Defendants in support of their motions for summary judgment refute this claim and demonstrate that Plaintiff was placed on secure management when his behavior caused a threat to the safety of others, he was informed of the reason he was moved to secure management, and he was informed that his cooperation during the assessment would help determine the need for continued secure management. (Exhibit 2 to Doc. #234; see also Exhibits 1, 3 to Doc. #234; Exhibits to Doc. #204).


### IV.  Applicable Law

## A. §1983 and Pre-trial detainees

In any §1983 action, the initial inquiry must focus on whether the two essential elements to a §1983 action are present:

> (1) whether the person engaged in the conduct complained of was acting under color of state law; and (2) whether the alleged conduct deprived a person of rights, privileges or immunities guaranteed under the Constitution or laws of the United States. <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981), <u>overruled on other grounds by</u>, <u>Daniels v. Williams</u>, 474 U.S. 327 (1986); <u>Burch v. Apalachee Cmty. Mental Health Servs., Inc.</u>, 840 F.2d 797, 800 (11th Cir. 1988), <u>aff'd by</u>, <u>Zinermon v. Burch</u>, 494 U.S. 113 (1990).

<u>Duke v. Massey</u>, 87 F.3d 1226, 1231 (11th Cir. 1996); <u>Hale v. Tallapoosa County</u>, 50 F.3d 1579, 1582 (11th Cir. 1995). In addition, plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. <u>Marsh v. Butler County, Ala.</u>, 268 F.3d at 1059; <u>Swint v. City of Wadley, Ala.</u>, 51 F.3d 988 (11th Cir. 1995); <u>Tittle v. Jefferson County Comm'n</u>, 10 F.3d 1535, 1541 n.1 (11th Cir. 1994).

At the time Plaintiff filed his Second Amended Complaint he was detained at the FCCC pending his commitment trial. A person who is civilly committed is in a position analogous to a criminally confined prisoner. <u>See</u> <u>Pullen v. State</u>, 802 So. 2d 1113, 1119 (Fla. 2001)("the curtailment of the fundamental right of liberty is implicated in both criminal proceedings and involuntary civil commitments"). Residents at the FCCC who are civilly committed are subject to internal regulations much like those established by

-14-

the Florida Department of Corrections and are considered "totally confined." <u>See</u> Fla. Stat. § 394.912(11). The Court concludes that persons at the FCCC who are civilly committed have constitutional rights analogous to those possessed by a prisoner.

Plaintiff's rights as a detainee arise from the Fourteenth Amendment, though the case law developed with regard to the Eighth Amendment prohibitions against cruel and unusual punishment is analogous. <u>Cook ex. rel Estate of Tessier v. Sheriff of Monroe County Fla.</u>, 402 F.3d 1092, 1115 (11th Cir. 2005). <u>See also</u> <u>Hamm v. DeKalb County</u>, 774 F.2d 1567, 1574 (11th Cir. 1985)("In regard to providing pretrial detainees with such basic necessities as food, living space, and medical care, the minimum standard allowed by the due process clause is the same as that allowed by the Eighth Amendment for convicted persons.").

**B. Excessive Force**

The Eighth Amendment's prohibition against cruel and unusual punishment governs a plaintiff's claim that a prison official's use of force was excessive. <u>Whitley v. Albers</u>, 475 U.S. 312, 327 (1986). To establish an excessive force claim, a plaintiff must prove that "force was applied ... maliciously and sadistically for the very purpose of causing harm." <u>Whitley</u>, 475 U.S. at 320-21 (quoting <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2d Cir.1973)). "The infliction of pain in the course of a prison security measure ... does not amount to cruel and unusual punishment simply because it

may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable ....[as long as it is applied] in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically for the very purpose of causing harm." Id. at 319-21 (quoting Johnson, 481 F.2d at 1033).  The Supreme Court has outlined five factors to analyze whether prison officials used force maliciously and sadistically: (1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them. Whitley, 475 U.S. at 321.

"The absence of 'serious injury' alone is insufficient to dismiss a prisoner's Eighth Amendment claim." Harris v. Chapman, 97 F.3d 499, 505 (11th Cir. 1996) (quotations omitted). "Only 'de minimis' uses of force are beyond constitutional recognition." Id. (citations omitted). "Moreover, the Supreme Court has suggested that the type of punishment, rather than some arbitrary quantity of injury, may be relevant for Eighth Amendment purposes." Id. (citations omitted).

Not every malevolent touch by a prison guard gives rise to a federal cause of action. Johnson v. Glick, 481 F.2d 1028, 1033 (2nd Cir. 1973)) ("Not every push or shove, even if it may later

-16-

seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). Although the absence of serious injury alone is insufficient to dismiss a prisoner's Eighth Amendment claim, the absence of any injury or a showing of <u>de minimis</u> injury is relevant evidence of a <u>de minimis</u> use of force.

> <u>Hudson</u> does not suggest, much less hold, that the extent of injury is irrelevant to whether excessive force has been employed and therefore that an excessive force claim cannot be defeated by evidence that the plaintiff's injury was <u>de minimis</u>. Each of the several circuits that have considered the relevance of <u>de minimis</u> injury in consideration of the objective component of the excessive force inquiry post-<u>Hudson</u> have read the Court's opinion in this way. For example, the Eighth Circuit, reaffirming its prior holdings that "actual injury is required to state an Eighth Amendment violation," noted that its requirement was "consistent with the Supreme Court's conclusion that more than <u>de minimis</u> force is necessary." <u>Cummings v. Malone</u>, 995 F.2d 817, 822-23 (8th Cir. 1993). The Fifth Circuit, too, has consistently held that "[i]n cases post-<u>Hudson</u>, '[c]ertainly some injury is still required.'" <u>Rankin v. Klevenhagen</u>, 5 F.3d 103, 108 (5th Cir. 1993) (quoting <u>Spann v. Rainey</u>, 987 F.2d 1110, 1115 n.7 (5th Cir. 1993)); <u>cf</u>. <u>Jackson v. Culbertson</u>, 984 F.2d 699, 700 (5th Cir. 1993) ("Because he suffered no injury, we find that the spraying of Jackson with the fire extinguisher was a de minimis use of physical force and was not repugnant to the conscience of mankind."); <u>see also</u> <u>Moore v. Holbrook</u>, 2 F.3d 697, 704 (6th Cir. 1993) (Batchelder, J., dissenting) ("<u>de minimis</u> injuries suggest <u>de minimis</u> use of force").

<u>Norman v. Taylor</u>, 25 F.3d 1259, 1263-64 (4th Cir. 1994)(1995). The Fourth Circuit held that "absent the most extraordinary

circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis." Id. (footnote omitted).

In the instant case, with regard to the two incidents on May 19, 2001, and August 28, 2002, which resulted in Plaintiff's being forcibly removed to secure management, the Defendants have demonstrated conclusively that 1) Plaintiff was not seriously or noticeably injured, 2) the need for force arose when Plaintiff's behavior caused a safety risk and he refused to calm down, 3) the employees used as little force as necessary to secure Plaintiff in handcuffs, and when he would not walk, they dragged him, 4) the forceful effort was only employed after verbal intervention failed and after Plaintiff's behavior escalated, and 5) Plaintiff's resident status in a facility for violent sexual offenders, his threats to staff, and his prior behavior provided the employees with ample reason to resort to minor forceful measures to subdue Plaintiff. Furthermore, Plaintiff has demonstrated no more than a de minimis injury, which arose from a de minimis use of force. The FCCC Defendants and Defendant Morales are entitled to summary judgment on the claims of excessive use of force.

**C. Due Process**

Due process requires that a pretrial detainee not be punished prior to a lawful conviction. Bell v. Wolfish, 441 U.S. 520, 535 (1979); McMillian v. Johnson, 88 F.3d 1554, 1564 (11th Cir.1996),

amended by 101 F.3d 1363 (11th Cir.1996). The government may detain individuals and may subject them to the conditions and restrictions of the detention facility so long as those conditions and restrictions *do not amount to punishment.* Wolfish, 441 U.S. at 536-37. An intent to punish on the part of detention facility officials is sufficient to show unconstitutional pretrial punishment. Id. at 538; McMillian, 88 F.3d at 1564. Further, "if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment[.]" Wolfish, 441 U.S. at 539.

In the instant case, the determination to be made is whether Plaintiff's allegations rise to the level of a federal constitutional violation, i.e., was Plaintiff placed in secure management in the treatment facility as punishment, and whether the alleged procedural deficiencies, the lack of a hearing, are such that Plaintiff's due process rights were violated. Here, Plaintiff has not alleged any facts that would lead this Court to conclude that his placement in secure management was actually a disciplinary confinement for punitive purposes. Rather, the uncontroverted documents submitted by Defendants demonstrate that Plaintiff was placed in secure management for his own safety as well as the safety of the residents and staff, and that he held the key to his liberty through cooperation with the employees and medical staff.

Defendants Briody and Lipscombe are entitled to summary judgment on the claims that they denied Plaintiff Due Process as a result of his placement in secure management on May 19, 2001 and August 28, 2002.

**D. Deliberate Indifference to Serious Medical Needs**

In order to state a claim for a violation under the Eighth Amendment, Plaintiff must show that public officials acted with deliberate indifference to Plaintiff's serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976); Farrow v. West, 320 F.3d 1235 (11th Cir. 2003).  Thus, a plaintiff first must show that he had an "objectively serious medical need" Id. (citing Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000); and second, that the official acted with an attitude of "deliberate indifference" toward rendering treatment to the serious medical need. Id. (quoting Farmer v. Brennan, 511 U.S. 825 (1994)). Deliberate indifference is a state of mind more egregious and culpable than mere negligence. Estelle, 429 U.S. at 104-106.  In fact, even gross negligence does not satisfy the "sufficiently culpable state  of mind" standard. Miller v. King, 384 F.3d 1248, 1261 (11th Cir. 2004).  Thus, "medical treatment violates the Eighth Amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Faison v. Rosado, 129 Fed.Appx.490, 491 (11th Cir. 2005) (quoting Harris v. Thigpen, 941 F.2d 1495, 1501 (11th Cir.1991)).

The course of treatment chosen by a medical official is "a classic example of a matter for medical judgment." Estelle, 429 U.S. at 107.  Thus, no constitutional violation exists where an inmate and prison medical official merely disagree as to the proper course of medical treatment. Id. at 106.  Classic examples of matters for medical judgment include whether an x-ray, or additional diagnostic technique or form of treatment are indicated. Id. at 107.

The Eighth Amendment, which prohibits the infliction of cruel and unusual punishment on those convicted of crimes, has two components (objective and subjective) that a prisoner must allege and prove before a violation will be found.  Farmer v. Brennan, 511 U.S. 825, 834 (1994); Hill v. DeKalb Req'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994).  "The objective component of an Eighth Amendment claim is . . . contextual and responsive to 'contemporary standards of decency.'"  Hudson v. McMillian, 503 U.S. 1, 8 (1992) (citation omitted); Hill, 40 F.3d at 1186.  The objective component "inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation . . . ."  Sims v. Mashburn, 25 F.3d 980, 983-84 (11th Cir. 1994) (citation omitted).  For instance, to satisfy the objective prong for a conditions of confinement claim, "extreme deprivations are required . . . ."  Hudson, 503 U.S. at 9.  Thus, only the deprivations denying "the minimal civilized measure of life's necessities" are sufficiently

grave to form the basis of an Eighth Amendment violation.   Rhodes v. Chapman, 452 U.S. 337, 347 (1981).   A similar analysis is applicable to a medical claim.   "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"   Hudson, 503 U.S. at 9 (quoting Estelle v. Gamble, 429 U.S. 97, 103-04 (1976)).

With regard to the subjective portion of the inquiry, the United States Supreme Court extended the deliberate indifference standard applied to Eighth Amendment claims involving medical care to claims concerning conditions of confinement.   Wilson v. Seiter, 501 U.S. 294 (1991).   Specifically, the Court stated:

> Since, we said, only the "'unnecessary and wanton infliction of pain'" implicates the Eighth Amendment, id., at 104, 97 S. Ct., at 291 (quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S. Ct., 2909, 2925, 49 L. Ed. 2d 859 (1976) (joint opinion)(emphasis added)), a prisoner advancing such a claim must, at a minimum, allege "deliberate indifference" to his "serious" medical needs.   429 U.S., at 106, 97 S. Ct., at 292.   "It is only such indifference" that can violate the Eighth Amendment, ibid. (emphasis added); allegations of "inadvertent failure to provide adequate medical care," id., at 105, 97 S. Ct., at 292, or of a "negligent . . . diagnos[is]," id., at 106, 97 S. Ct., at 292, simply fail to establish the requisite culpable state of mind.
>
> . . .
>
> Thus, as retired Justice Powell had concluded: "Whether one characterizes the treatment

-22-

> received by [the prisoner] as inhumane
> conditions of confinement, failure to attend
> to his medical needs, or a combination of
> both, it is appropriate to apply the
> 'deliberate indifference' standard articulated
> in <u>Estelle</u>."

<u>Id.</u> at 296, 303.  In sum, the subjective component "inquires whether the officials acted with a sufficiently culpable state of mind." <u>Sims</u>, 25 F.3d at 983-84 (citation omitted).  With these subjective and objective components, courts considering a prisoner's Eighth Amendment claim must determine whether "'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." <u>Hudson</u>, 503 U.S. at 8 (citation omitted).

Plaintiff claims, *inter alia*, that Defendants Conway and Machado failed to provide adequate medical care for his herniated disc and sciatica, and he seeks $50,000.00 for physical and emotional injury. Without determining whether Plaintiff's herniated disc or sciatica constitute a "serious medical condition," the Court finds that none of the actions, or inactions, allegedly committed by Defendants Conway or Machado evidences "deliberate indifference" to Plaintiff.  Plaintiff's Second Amended Complaint at most sets forth a claim for medical malpractice, but falls short of articulating an Eighth or Fourteenth Amendment claim.  In fact, by Plaintiff's own admissions (1) he was routinely and consistently, though perhaps not happily, seen and examined by

medical staff; (2) was prescribed medicine for pain; (3) was transported off site to outside medical facilities for further testing, evaluation, and surgery; (4) was transported and examined by off-site specialists, once located; and (5) was scheduled for and received surgery.  In fact, Plaintiff's allegations of medical indifference stem from what Plaintiff perceives as a lack of quality or consistency in the care rendered, not a lack of medical care.  While the facts as stated by Plaintiff do not portray Defendant Conway in a positive light, they also do not portray violations that would rise above medical negligence.  The claims against Machado do not even rise to the level of medical negligence.

The fact that Plaintiff was not always afforded immediate attention by the nurses is customary for an institutional setting. Plaintiff's disagreement with the medical officials as to the proper diagnosis of his medical condition, his preferred course of treatment, or the amount of pain medication that Plaintiff desired does not give rise to a constitutional claim.  Essentially, Plaintiff contends that more should have been done to properly assess and manage Plaintiff's medical condition.  Such a claim is properly pursued in the state court under Florida's tort statute, not in this Court as a constitutional claim.

**E. Failure to train**

Plaintiff's Second Amended Complaint lacks specific allegations against Briody that would subject him to liability for any abuse Plaintiff claims to have suffered at the hands of any Defendants named herein, and does not sufficiently allege that Briody personally participated in the alleged constitutional deprivation. <u>Brown v. Crawford</u>, 906 F.2d 667, 671 (11th Cir. 1990). Nevertheless, Plaintiff seeks $10,000.00 and a declaratory judgment that Briody's failure to take action to curb the physical abuse violated Plaintiff's Eighth Amendment rights and constituted an assault and battery. It appears that Plaintiff included this Defendant in this action due only to his supervisory position and he conclusorily alleges Defendant Briody "has been placed on notice of the abusive conduct of defendants Landers, Cottrell, Staunton, and Dixon by a number of concerns, complaints, and grievances over many months, but has failed to take disciplinary action against them or otherwise control their behavior." Second Amended Complaint, p. 8, ¶51.

Section 1983 claims predicated on respondeat superior theories have been uniformly rejected. <u>Mondell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690-692(1978); <u>LaMarca v. Turner</u>, 995 F.2d 1526, 1538 (11th Cir. 1993). He also claims Briody was "placed on notice of the abusive conduct" of Defendants Morales and Brunson. Second Amended Complaint, p. 18, ¶116. Plaintiff's insufficient allegations do not support supervisory liability as he claims that

-25-

solely by virtue of his position, Briody knew or should have known of the abusive conduct. Plaintiff does not demonstrate that Briody had actual, subjective knowledge and chose not to act.  Finally, Plaintiff argues that the "on the job training" that employees receive gives rise to a failure to adequately train by Briody for which Plaintiff seeks $10,000.00. This, too, is not sufficient to state a cause of action for a constitutional violation.

Plaintiff's  Second Amended Complaint contain no allegations of a policy, custom or practice on the part of Briody or Lipscombe the "moving force" behind any other Defendant's alleged misconduct. Bd. of County Comm'rs v. Brown, 520 U.S. 397,  403(1997), see also Jones v. Cannon, 174 F.3d 1271, 1292 (11th Cir. 1999), Tennant v. Florida, 111 F. Supp. 2d 1326 (S.D. Fla. 2000). Aside from his conclusory statements that Briody was on notice of abusive conduct, Plaintiff does not adequately allege any violations of his constitutional rights.

**F.    Use of Restraints**

Plaintiff's claims set forth in his  Second Amended Complaint regarding the use of restraints were previously dismissed by the Court in its Order of Court dated February 1, 2005 (Doc. #213).

**V.**

ACCORDINGLY, it is hereby **ORDERED, ADJUDGED and DECREED:**

-26-

1. Defendant Morales's Motion for Summary Judgment (Doc. #234) is **GRANTED.**

2.   The FCCC Defendants' Motion for Summary Judgment (Doc. #204) is **GRANTED.**

3.   The **Clerk of Court** shall enter judgment accordingly, terminate all pending motions, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida, on this <u>29th</u> day of September, 2005.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record